IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SHEREE RUSSELL, | CASE NO. 1:25-cv-640 |
| Plaintiff, | DISTRICT JUDGE PATRICIA A. GAUGHAN |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | MAGISTRATE JUDGE JAMES E. GRIMES JR. |
| Defendant. | **REPORT AND RECOMMENDATION** |

Plaintiff Sheree Russell filed a complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying her applications for disability insurance benefits and supplemental security income. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Court referred this matter to a Magistrate Judge under Local Rule 72.2(b)(1) for the preparation of a Report and Recommendation. Following review, and for the reasons stated below, I recommend that the District Court reverse the Commissioner's decision and remand for further proceedings.

**Procedural background**

In December 2021, Russell filed applications for disability insurance benefits and supplemental security income, alleging a disability onset date of

1

October 19, 2021.[1] *See* Tr. 34. In pertinent part, Russell claimed that she was disabled and limited in her ability to work due to epilepsy. *See* Tr. 268. The Commissioner denied Russell's applications initially and on reconsideration. Tr. 128, 133, 145, 149.

In March 2023, Russell requested a hearing. Tr. 152. In December 2023, Administrative Law Judge ("ALJ") Amy Budney held a telephonic hearing. Tr. 58–90. Russell appeared, testified, and was represented by counsel at the December 2023 hearing. *See* Tr. 58. Qualified vocational expert Michelle Ross also testified. *Id*. In January 2024, the ALJ issued a written decision finding that Russell was not entitled to benefits. Tr. 34–51.

In February 2024, Russell appealed the ALJ's decision to the Appeals Council. *See* Tr. 217. In January 2025, the Appeals Council denied Russell's appeal, making the ALJ's January 2024 decision the final decision of the Commissioner. Tr. 2; *see* 20 C.F.R. § 404.981.

Russell timely filed this action in April 2025. Doc. 1. In it, she asserts the following legal issue:

> Whether the ALJ reversibly erred by failing to properly evaluate the prior administrative medical findings and medical opinions for supportability and consistency as required by 20 C.F.R. § 404.1520c.

Doc. 9, at 1.

---

[1]    "Once a finding of disability is made, the [agency] must determine the onset date of the disability." *McClanahan v. Comm'r of Soc. Sec.*, 193 F. App'x 422, 425 (6th Cir. 2006).

**Evidence**[2]

Russel was 43 years old on the alleged disability onset date. Tr. 49. She has a high school education and many past relevant jobs including, among other roles, as a material handler and stamp press operator. Tr. 48–49.

**The ALJ's Decision**

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.

2. The claimant has not engaged in substantial gainful activity since October 19, 2021, the alleged onset date (20 CFR 404.1571 et *seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: seizure disorder, major depressive disorder, anxiety disorder, and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work

---

[2]      Russell did not include any discussion of the medical or opinion evidence in her factual background section, as required by the Court's initial order. *See* Doc. 4, at 3. As a result, I have only considered Russell's arguments to the extent that they raise purely legal issues and do not rely on the medical evidence of record.

at all exertional levels but with the following non-exertional limitations: never climb ladders, ropes, and scaffolds; should never be exposed to unprotected heights, dangerous moving mechanical parts, and commercial motor vehicles; never work around open flames or open bodies of water; occasionally and superficially interact with supervisors, coworkers, and the public; and tolerate occasional changes in a routine work setting. Superficial interaction is defined as work that does not involve any tasks such as arbitration, negotiation, confrontation, being responsible for the safety of others, or directing the work of others.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on November 27, 1977, and was 43 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

4

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 19, 2021, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 34–50.

**Standard for Disability**

Eligibility for social security benefit payments depends on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

An ALJ is required to follow a five-step sequential analysis to make a disability determination:

1.  Is the claimant engaged in substantial gainful activity? If so, the claimant is not disabled.

2.  Does the claimant have a medically determinable impairment, or a combination of impairments, that is "severe"? If not, the claimant is not disabled.

3.  Does the claimant's impairment meet or equal one of the listed impairments and meet the duration requirement? If so, the claimant is disabled. If not, the ALJ proceeds to the next step.

4.  What is the claimant's residual functional capacity and can the claimant perform past

relevant work? If so, the claimant is not disabled. If not, the ALJ proceeds to the next step.

5. Can the claimant do any other work considering the claimant's residual functional capacity, age, education, and work experience? If so, the claimant is not disabled. If not, the claimant is disabled.

20 C.F.R. §§ 404.1520, 416.920; *see Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008). Under this sequential analysis, the claimant has the burden of proof at steps one through four. *Jordan*, 548 F.3d at 423. The burden shifts to the Commissioner at step five "to prove the availability of jobs in the national economy that the claimant is capable of performing." *Id.* "The claimant, however, retains the burden of proving her lack of residual functional capacity." *Id.* If a claimant satisfies each element of the analysis and meets the duration requirements, the claimant is determined to be disabled. *Walters Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

**Standard of Review**

A reviewing court must affirm the Commissioner's conclusions unless it determines "that the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Jordan*, 548 F.3d at 422. "'[S]ubstantial evidence' is a 'term of art'" under which "a court … asks whether" the "existing administrative record … contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citations omitted). The substantial

evidence standard "is not high." *Id.* at 103. Substantial evidence "is 'more than a mere scintilla'" but it "means only[] 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citations omitted). The Commissioner's "findings … as to any fact if supported by substantial evidence [are] conclusive." 42 U.S.C. § 405(g); *Biestek*, 587 U.S. at 99.

A court may "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Even if substantial evidence or a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice within which" the Commissioner can act, without fear of judicial "interference." *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009) (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)).

**Discussion**

As an initial issue, Russell begins her argument section by asserting that the ALJ did not apply the correct standard for evaluating opinion evidence. *See* Doc. 9, at 7. This argument is not clearly contemplated by her issue statement, which challenges only whether supportability and consistency were properly evaluated, *see* Doc. 9, at 1, and it is meritless because as the Commissioner points out, *see* Doc. 11, at 7–8, the ALJ cited the correct

standard for the evaluation of medical opinion evidence. *See* Tr. 45; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

Beyond this initial argument, all of Russell's arguments challenge the ALJ's evaluation of specific opinion evidence. As the following demonstrates, the ALJ failed to comply with regulations governing the evaluation of that evidence. As a result, for all of the following reasons I recommend that the reverse the ALJ's decision and remand this matter for further consideration.

The Commissioner is required to evaluate the persuasiveness of all medical opinions using the following factors: supportability; consistency; treatment relationship, including the length, frequency, purpose, and extent; specialization; and other factors. 20 C.F.R. §§ 416.920c(a), 416.920c(c)(1)–(5). Supportability and consistency are the most important factors. 20 C.F.R. § 416.920c(a). Supportability means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[] … the more persuasive the medical opinions … will be." 20 C.F.R. § 416.920c(c)(1). Consistency means "[t]he more consistent a medical opinion[] … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] … will be." 20 C.F.R. § 416.920c(c)(2). The Commissioner must explain the supportability and consistency factors when discussing a medical opinion. 20 C.F.R. § 416.920c(b)(2). "[A]n ALJ need not," however, "specifically use the terms 'supportability' or 'consistency' in his analysis." *Cormany v.*

*Kijakazi*, No. 5:21-cv-933, 2022 WL 4115232, at *3 (N.D. Ohio Sept. 9, 2022) (citing cases). The Commissioner is not required to discuss the remaining factors. *Id*. "A reviewing court evaluates whether the ALJ properly considered the factors as set forth in the regulations to determine the persuasiveness of a medical opinion." *Toennies v. Comm'r of Soc. Sec.*, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020) (internal quotation marks and citation omitted).

To start, Russell challenges the ALJ's evaluation of the consultative examiner's opinion. Doc. 9, at 8. Russell's objection to the ALJ's evaluation of Dr. Konieczny's opinion is purely legal because she asserts that the ALJ simply "failed to evaluate the opinion" by not discussing "both supportability and consistency." *Id*. The Court is able to consider this argument despite Russell's failure to comply with the Court's initial order. So Russell's failure to include a *Facts* section in her brief, as the Court's initial order requires, *see* Doc. 4, at 3, does not doom her complaint.

The ALJ discussed Dr. Konieczny's exam findings and concluded as follows:

> The undersigned also considered the opinion provided by J. Joseph Konieczny, Ph.D. based on a psychological consultative evaluation conducted on January 26, 2023. Dr. Konieczny opined no obvious limitations in the ability to understand, remember, and carry out instructions and in attention and concentration and persistence in single and multi-step tasks but that as a result of mood symptoms, the claimant would have diminished tolerance for frustration and diminished coping skills which would impact her ability to respond to typical supervision and interpersonal situations in the work

> setting as well as to respond to typical pressure situations in the work setting. The undersigned finds this opinion somewhat persuasive because it is vague as to degree of limitations in these areas and does not account for difficulty with memory, confusion, focus, and concentration.

Tr. 46 (citations omitted).

The ALJ did not discuss either supportability or consistency in the passage above. The Commissioner does not claim otherwise. *See* Doc. 11, at 8. The ALJ's failure to discuss the supportability and consistency factors is reversible error. *See* 20 C.F.R. § 416.920c(b)(2) (the ALJ "must explain the supportability and consistency factors when discussing a medical opinion."); *see, e.g., Brenda T. v. Comm'r of Soc. Sec. Admin.*, No. 2:23-cv-2980, 2024 WL 3506947, at *10 (S.D. Ohio July 22, 2024) (finding that the ALJ committed reversible error when he failed to discuss the supportability of a medical opinion), *report and recommendation adopted*, 2024 WL 3677636 (S.D. Ohio Aug. 6, 2024); *Kopec v. Comm'r of Soc. Sec.*, No. 1:23-cv-680, 2023 WL 6958636, at *7 (N.D. Ohio Oct. 20, 2023) ("Simply put, the ALJ didn't comply with the regulations" when she failed to discuss the supportability factor, "which is grounds for reversal."); *John F. v. Comm'r of Soc. Sec. Admin.*, No. 3:22-cv-260, 2023 WL 4759127, at *6 (S.D. Ohio July 26, 2023) ("[T]his Court agrees that the ALJ failed to follow the regulatory requirement to evaluate the consultants' opinions for supportability. The failure to comply with a legal requirement constitutes reversible error."); *Reed v. Comm'r of Soc. Sec.*, No. 3:20-cv-2611,

2021 WL 5908381, at *6 (N.D. Ohio Dec. 14, 2021) (the ALJ's failure to discuss the supportability factor was reversible error).

The Commissioner argues that the ALJ's description of the of Dr. Konieczny's as "vague" was sufficient to excuse the ALJ's failure to discuss supportability and consistency. *See* Doc. 11, at 8. But the Commissioner seemingly ignores that the ALJ did not fully discount Dr. Konieczny's opinion due to vagueness. *See* Tr. 46 ("this opinion [is] somewhat persuasive because it is vague"). And while the cases cited support the Commissioner's argument that vagueness can be a basis to discount a medical opinion, they do not hold that a vagueness finding would allow an ALJ to avoid assessing an opinion's supportability and consistency. For instance, in *Woodward*, the court considered whether the ALJ's decision that an opinion was unpersuasive because the "opined limitations were vague and/or not defined in vocationally relevant terms," was supported by substantial evidence. *Woodward v. Comm'r of Soc. Sec.*, No. 5:22-cv-01728, 2023 WL 6005004, at *10 (N.D. Ohio Jul. 27, 2023), *report and recommendation adopted* 2023 WL 5842016 (N.D. Ohio Sept. 11, 2023). There the district court also concluded that whether it was sufficient for the ALJ to reject an opinion as vague was "a close question" but "also a question that the Court need not address because it has already found that substantial evidence justifies the ALJ's weighing of [the] opinion." *See* 2023 WL 5842016, at *3. Importantly, the court concluded that the ALJ did address supportability and consistency. *Woodward*, 2023 WL 6005004, at *8, 10.

11

The other case cited by the Commissioner, *Springer*, is also distinguishable. *See* Doc. 11, at 8. Most relevantly, because Springer's claim was filed before March 2017, the former treating physician rule applied and the current regulation did not apply. *See Springer v. Comm'r of Soc. Sec.*, 2020 WL 9259707, at *6 (N.D. Ohio Oct. 8, 2020) (applying the former treating-physician rule), *report and recommendation adopted* 2021 WL 1015944 (N.D. Ohio Mar. 17, 2021). And the court in *Springer*, considered the vagueness of a medical opinion through the lens of plaintiff's disagreement over whether, as a matter of fact, the medical opinion was vague. *Id*. at 9.

Here, Russell only challenges whether the ALJ complied with applicable regulations, a purely legal argument. *See* Doc. 9, at 8. So the Commissioner's apparent position that the "ALJ reasonably found these limitations vague, and thus, she did not discuss supportability and consistency" evades the issue presented. Neither of the cases cited support the broad suggestion that the Commissioner appears to make: that an ALJ is excused from discussing the mandatory factors of supportability and consistency simply because the ALJ opined that the content of an opinion was vague. Instead, the cases support that where an ALJ describes an opinion as vague, that determination may provide substantial evidence to support the ALJ's conclusion that the decision is unpersuasive. This factual conclusion is distinct from the ALJ's mandatory evaluation of supportability and consistency. *See* 20 C.F.R. § 416.920c(b)(2).

Because the Commissioner has not shown that the ALJ considered these mandatory factors, remand is necessary.

Russell next argues that the ALJ erred by failing to discuss the supportability of Nurse Hanchin's opinion. Doc. 9, at 10. When explaining her evaluation of Nurse Hanchin's opinion, the ALJ said:

> In addition, the undersigned considered the opinion of Karlee Hanchin, CNP dated May 17, 2022 (Ex. 5F). She opined the claimant can walk two city blocks without rest, sit more than two hours at a time, stand for about one hour at a time, and sit and stand/walk at least six hours total in an eight-hour workday. The claimant does not need a job that permits shifting positions at will from sitting, standing, or walking, and needs no unscheduled breaks. She can frequently lift up to 20 pounds frequently, never climb ladders, and occasionally climb stairs, frequently twist, stoop, and crouch. There are no manipulative limitations. She is unlikely to be off task unless a seizure occurs and would be absent from work as a result of impairments or treatment about two days a month if a seizure occurs. The claimant is required to follow general seizure precautions of no heavy machinery, heights, lifting over 25 pounds overhead, or driving until six-months seizure-free. The undersigned finds this opinion somewhat persuasive because standing, walking, lifting, and reaching limitations are *inconsistent with other examinations in the record* that showed full strength, no deficits in range of motion, particularly affecting bilateral lower and upper extremities, and normal and intact gait, balance, and coordination.

Tr. 47 (citations omitted) (emphasis added).

13

Here, as the Commissioner concedes, Doc. 11, at 11, the extent of the ALJ's consideration of Nurse Hanchin's opinion was limited to the consistency factor. *Id*. The ALJ only evaluated Nurse Hanchin's opinion in comparison with "other examinations in the record," which goes to consistency. The ALJ's discussion is silent as to whether or how she evaluated the supportability of Nurse Hanchin's opinion.

The Commissioner, however, asks the Court to find Nurse Hanchin's opinion is patently deficient because it was rendered on a check-the-box form. *See* Doc. 11, at 11. Under certain circumstances, such as in the case the Commissioner cites, where an ALJ's decision is challenged based on a lack of substantial evidence, the Court might agree with the Commissioner's argument. *See* Doc. 11, at 11 (citing *Dornan v. Comm'r of Soc. Sec.*, No. 1:22-cv-02244, 2023 WL 8789168, at *10 (N.D. Ohio Dec. 4, 2023), *report and recommendation adopted* 2023 WL 8780713 (N.D. Ohio Dec. 19, 2023). But here, the ALJ did not discount Nurse Hanchin's opinion because it was rendered. Indeed, the ALJ found Nurse Hanchin's opinion "somewhat persuasive." Tr. 46. The check-the-box nature of that opinion is a characterization that appears for the first time in the Commissioner's brief. The Commissioner's post-hoc basis for rejecting Nurse Hanchin's opinion is not well-taken. *See Berryhill v. Shalala*, 4 F.3d 993 (Table), 1993 WL 361792, at *7 (6th Cir. 1993) ("in large part, an agency's decision must be affirmed on the

grounds noted in the decision"); *see also Harvey v. Comm'r of Soc. Sec.*, No. 16–3266, 2017 WL 4216585, at *7 (6th Cir. Mar. 6, 2017).

Russell similarly challenges the ALJ's evaluation of the state agency medical consultants' opinions, claiming that she failed to articulate how she considered the supportability factor. Doc. 9, at 8–9. The ALJ found persuasive the opinions issued by state agency medical consultants Drs. Dana Schultz and W. Scott Bolz. Tr. 45. The ALJ also found physical additional limitations were appropriate. Tr. 46. Then, the ALJ found "somewhat persuasive" the opinion offered by  state agency psychological consultant, Dr. Aracelis Rivera Castro. Tr. 46. To explain her consideration of these three opinions, the ALJ stated:

> The undersigned considered the opinions of the State agency consultants. The State agency medical consultants, Dana Schultz, M.D. and W. Scott Bolz, M.D., opined the claimant could never climb ladders, ropes, or scaffolds, and must avoid all exposure to hazards and no work around dangerous or moving machinery and no work at unprotected heights. The undersigned finds these opinions persuasive because they are consistent with and supported by the unremarkable testing and intact physical examinations and within normal limits, including regular heart rate and rhythm, clear lungs, full strength, normal balance and gait, intact coordination and neurological functioning; however, the undersigned has added additional limitations to account for seizure precaution.
>
> The State agency psychological consultant, Aracelis Rivera Castro, Psy.D., opined no limitation in understand, remember, or apply information; moderate limitation in interact with others; no limitation in concentrate, persist, or maintain pace, and moderate limitation in adapt or manage oneself and no evidence of Part C criteria. The claimant can

15

interact on an occasional and superficial basis and can adapt to occasional workplace changes. The undersigned finds this opinion somewhat persuasive because it is consistent with the objective evidence that demonstrated treatment consisting of psychotropic medication and outpatient visits for depression and anxiety symptoms. However, the undersigned has added limitations to account for any deficits in memory, focus, and concentration and experiencing confusion noted in additional evidence submitted at the hearing level and the claimant's subjective complaints.

Tr. 45–46 (citations omitted).

As to the state agency medical consultant's opinions, the ALJ stated that the opinions were persuasive because they "are consistent with and supported by the unremarkable testing and intact physical examinations and within normal limits[.]" Tr. 45. While the ALJ used the words "consistent" and "support," she only described medical evidence found elsewhere in the record–without discussing the evidence or explanations cited within the subject opinions. Tr. 46. In other words, the ALJ only explained how she considered the consistency of the state agency medical consultant's opinions.

As to the state agency psychological consultant's opinion, the ALJ wrote that Dr. Rivera Castro's opinion was "somewhat persuasive because it is consistent with the objective evidence that demonstrated treatment consisting of psychotropic medication and outpatient visits for depression and anxiety symptoms." Tr. 46. The ALJ did not discuss what Dr. Rivera Castro's opinion was based on and instead only discussed how that opinion compared to other

16

evidence in the record. In other words, the ALJ again only explained how she only considered the consistency of Dr. Rivera Castro's opinion.

The Commissioner argues that the since the ALJ included all the limitations, as well as additional limitations, that each of the state agency reviewers opined, Russell "has failed to show why remand for further consideration of these prior administrative medical findings is warranted." Doc. 11, at 9, 10. The Commissioner does not refute that the ALJ failed to explain how she considered the supportability factor when evaluating the state agency consultants' opinions. The Commissioner also does not respond to Russell's argument that "if the ALJ commits an error of law, the court must reverse and remand, 'even if the factual determinations are otherwise supported by substantial evidence and the outcome on remand is unlikely to be different.'" *See* Doc. 9, at 17 (quoting *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (internal citation omitted)). Nor, does the Commissioner argue that the ALJ's failure to consider the supportability amounted to harmless error. The Court is not inclined to make these forfeited arguments for the Commissioner. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020). Because the ALJ failed to comply with applicable regulations requiring her to consider both the supportability and consistency factors, remand is required.

Next, Russell argues that the ALJ failed to discuss the consistency of Dr. Rajeet Shrestha's opinion. Doc. 9, at 10. As to Dr. Shrestha's opinion, the ALJ stated:

> Rajeet Shrestha, M.D. provided an opinion dated August 8, 2023 (Ex. 14F). Dr. Shrestha opined the claimant would be off-task greater than 25 percent of an eight-hour workday due to symptoms severe enough to interfere with the attention and concentration necessary to perform simple tasks, and she is not able to sustain an eight-hour workday due to anxiety and depression and is not able to be in a work situation at all at this point. Dr. Shrestha further opined marked limitations in work activities, such as ability to remember locations and work-like procedures; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and accept instructions and respond appropriately to criticism from supervisors. The undersigned finds this opinion unpersuasive. Although Dr. Shrestha has a specialty in psychiatry, marked limitations and degree of off-task are not supported by his own treatment notes that indicated some benefit with medication, no side effects, and examinations that showed intact mental status functioning with good appearance, grooming, and hygiene, cooperative and pleasant behavior, normal speech, improved mood, goal-directed, linear, and

18

organized thought process, no paranoia, delusions, or ideation, no hallucinations, except for reports of hearing her cat or dog at a distance and seeing shadows out of the corner of her eyes, fair insight and judgment, orientation to time, place, and person, fair recent and remote recall, intact attention and concentration, no language deficits, and average fund of knowledge. The undersigned also finds that the opinion regarding not able to sustain an eight-hour workday or be in a work situation at all at this point is not persuasive because it is vague regarding duration of limitations, and the issue regarding the ability to work is reserved to the Commissioner.

Tr. 46–47 (citations omitted)

Here, as Russell argues, the ALJ failed to discuss the consistency factor. In her evaluation, the ALJ explained that she found Dr. Shrestha's opinion unpersuasive based on her consideration and comparison between the opinion and Dr. Shrestha's own treatment notes and examinations. *See* Tr. 47. Nowhere in the ALJ's explanation of her consideration of Dr. Shrestha's opinion does she discuss how that opinion was considered against the record as a whole, i.e. consistency.

In response, the Commissioner admits that "[t]he ALJ did not discuss the consistency of this opinion in this section of the decision" and directs the Court the ALJ's discussion of the Paragraph B criteria.[3] *See* Doc. 11, at 12

---

[3]      As part of step three in the sequential evaluation, the ALJ considered what are called the "paragraph B criteria." *See* Tr. 38. Listings 12.04 and 12.06, concerning mental impairments, contain three paragraphs—A, B, and C. To satisfy either listing, a claimant must satisfy the requirements in paragraphs

(citing Tr. 38). To this end, the Commissioner submits that the Court must review the ALJ's decision as a whole and asserts that "[t]hat the ALJ was not required to repeat [the Paragraph B] analysis again when considering the persuasiveness of Dr. Shrestha's opinion." *Id*. at 13. Indeed, the ALJ's decision must be read as a whole, *see Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014), and the ALJ is not required to repeat factual findings made elsewhere in her decision, *see Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014). But the Commissioner hasn't identified where in the decision the ALJ discussed the consistency factor as to Dr. Shrestha's opinion.

---

A and B or paragraphs A and C. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00A2. To satisfy the paragraph B criteria, the claimant must have an "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning: understanding, remembering, and applying information; interacting with others; concentrating, persisting, and maintaining pace; and adapting and managing oneself. *Id*. at 12.00A2b. Notably, as the ALJ recognized, consideration of the paragraph B criteria is explicitly distinct from the ALJ's evaluation of opinion evidence in crafting Russell's RFC:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

Tr. 30.

And review of the cited portion of the ALJ's decision does not show that the ALJ discussed the consistency factor as to Dr. Shreshta's opinion.

Additionally, the Commissioner does not argue that the ALJ's error was harmless. Instead, the Commissioner avers that the ALJ's discussion of the Paragraph B criteria was sufficient and concludes that "substantial evidence supports the ALJ's" ultimate finding that Russell was not disabled. *See* Doc. 11, at 13, 16. Without more, the Commissioner's responsive argument amounts to a post hoc rationalization, which is not permitted. *See Hicks v. Comm'r of Soc. Sec.*, 909 F.3d 786, 808 (6th Cir. 2018) ("[A]n agency's actions must be upheld, if at all, on the basis articulated by the agency itself, and not based on appellate counsel's post hoc rationalization[s]") (internal quotation marks and citations omitted). While the ALJ may not have been required to walk through the Paragraph B criteria once that evaluation was complete, the ALJ *was* required to discuss how she considered the consistency of Dr. Shrestha's opinion. *See* 20 C.F.R. § 416.920c(b)(2). The ALJ did not discuss how she considered the consistency factor, so remand is required.

Lastly, Russell argues that the ALJ erred when evaluating Counselor Javaheri's opinion. Doc. 9, at 11. The ALJ's analysis on that opinion is as follows:

> The undersigned also considered another assessment dated August 9, 2023 by Fauzia Javheri, an independent licensed social worker. She opined the claimant would be off-task greater than 25 percent of an eight-hour workday due to symptoms severe enough to interfere with the attention and

concentration necessary to perform simple tasks and is likely to miss a lot of days. The claimant has marked in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances as well as accept instructions and respond appropriately to criticism from supervisors. The claimant has extreme limitation in the ability to sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others. Fauzia Javheri noted the claimant has severe generalized anxiety and depression since she started having seizures that have heightened her symptoms and have limited her from performing simple tasks or being around a large crowd, and she experiences severe panic attacks and has isolated herself from going out. The undersigned also finds this opinion unpersuasive. Marked or extreme limitations and degree of off-task are not supported by treatment notes that indicated some benefit from medications, no side effects, and that the claimant answered questions, indicated understanding of instructions, attended appointments, and was generally able to follow treatment plans with changes as needed. This degree of limitation is also inconsistent with and not supported by Fauzia Javheri's own examinations that indicated the claimant routinely presented as alert and oriented with appropriate behavior and appearance, normal speech, euthymic mood,

22

congruent affect, excellent judgment, insight, and impulse control, intact memory, good attention and concentration, unremarkable thought process, appropriate thought content, unremarkable perception, and intact functional status. Fauzia Javheri's progress notes from these outpatient visits also indicated the claimant was able to engage in activities that suggest a higher degree of functioning than that with marked or extreme limitations. For example, despite some issues with social anxiety, difficulty being around others, fearful of having a seizure in public, and being distracted or losing track, the claimant reported working in the backyard growing vegetables, communicated directly with her boyfriend's daughter, started visiting with her neighbor, could go to the grocery store early in the morning when few people were around, and focused on cleaning her house and preparing for the holidays.

Tr. 47–48 (citations omitted).

Here, though ALJ used the words *supported* and *consistent*, the analysis and citation accompanying the ALJ's statements reflect that she did not consider both factors. For example, when the ALJ stated that certain marked or extreme limitations contained in Javheri's opinion were unpersuasive because they were "not supported by treatment notes," the ALJ cited only Javheri's own treatment notes. Tr. 48 (citing exhibits 10F, 13F, and 19F). And, when the ALJ said the degree of limitation to which Javheri opined was "inconsistent with and not supported by [Javheri's] own examinations" the ALJ cited again only to Javheri's records. *Id*. (citing exhibit 19F). Regardless of the words used, it is apparent from the ALJ's statements that her consideration of

Javheri's opinion was limited to how it compared to Javheri's own records. By explaining her consideration of Javheri's opinion only in terms of Javheri's own notes and examinations the ALJ only discussed the supportability factor. Since the ALJ failed to explain how she considered Javheri's opinion against the records as a whole, she did not show if or how she considered the consistency factor and failed to comply with the applicable regulations.

The Commissioner again recognizes that "the ALJ did not explicitly discuss the consistency" factor and points to the ALJ's Paragraph B evaluation. *See* Doc. 11, at 14–15. And the Commissioner does not engage with Russell's argument that remand is necessary even if the outcome on remand may not be different. Doc. 9, at 17 (quoting *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (internal citation omitted)). So, for the same reasons discussed above in relation to Dr. Shrestha's opinion, the Commissioner's suggestion, that the Court look to the ALJ's evaluation under Paragraph B, falls short. The Commissioner does not point to any instance elsewhere the ALJ discussed the consistency of Javheri's opinion. As a result, remand is necessary.

**Conclusion**

For the reasons explained above, I recommend that the Court reverse the Commissioner's decision and remand for further proceedings.

24

Dated: November 14, 2025

_/s/ James E. Grimes Jr._
James E. Grimes Jr.
U.S. Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–531 (6th Cir. 2019).